**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| WALTER GONZALES-SALAZAR, | CASE NO. 4:25-cv-02526 |
| Plaintiff, | DISTRICT JUDGE CHARLES E. FLEMING |
| vs. | |
| KEVIN RAYCRAFT, et al., | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Respondents. | **REPORT & RECOMMENDATION** |

Petitioner Walter Gonzales-Salazar, a citizen of Guatemala, filed a 28 U.S.C. § 2241

petition for release from immigration detention on November 19, 2025.  (ECF Doc. 1

("Petition").)  This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned

recommends that the Court **DENY** Respondent's Motion to Dismiss, **GRANT** Mr. Gonzales-

Salazar's Petition, and order that Mr. Gonzales-Salazar be released from custody immediately,

subject to his preexisting Order of Supervision.

## I.     Procedural History

In his Petition, Mr. Gonzales-Salazar seeks release from immigration detention.  (ECF

Doc. 1.)  On January 7, 2025, he filed a motion for issuance of an order to show cause why his

petition should not be granted.  (ECF Doc. 7.)  On January 9, 2026, the Court ordered

Respondents to file a Return of Writ showing cause why the writ should not be granted within

three business days.  (ECF Doc. 8.)  Respondents filed a Return of Writ and Motion to Dismiss

on January 14, 2026 (ECF Doc. 10), and Mr. Gonzales-Salazar filed his Traverse on January 23,

1

2026 (ECF Doc. 13).  The Court subsequently ordered Respondents to supplement their Return of Writ with further information about the status of Petitioner's immigration proceedings, efforts being made to remove him, and medical treatment and accommodations being provided to address his glaucoma.  (Non-doc Order dated Feb. 18, 2026.)  Respondents supplemented the record on February 25, 2026.  (ECF Doc. 15.)

## II.  Factual Background

Mr. Gonzales-Salazar is a citizen of Guatemala.  (ECF Doc. 1, p. 2, ¶ 7; ECF Doc. 10-4, p. 6.)  On August 26, 2006, he tried to enter the United States without proper documentation near Hidalgo, Texas.  (ECF Doc. 10, p. 7; ECF Doc. 10-1.)  Customs and Border Patrol found him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and ordered him removed pursuant to 8 U.S.C. § 1225(b)(1), which provides for the expedited removal of noncitizens.  (ECF Doc. 10-1.)  Mr. Gonzales-Salazar was removed on September 11, 2006.  (ECF Doc. 10-2.)

On June 19, 2018, Mr. Gonzales-Salazar reentered the United States illegally at or near Pharr, Texas.  (ECF Doc. 1, p. 2, ¶ 7; ECF Doc. 10-2.)  On June 20, 2018, the Department of Homeland Security ("DHS") issued a Form I-871 Notice of Intent/Decision to Reinstate Prior Order, reinstating Mr. Gonzales-Salazar's 2006 final order of removal.  (ECF Doc. 10-2.)  Rather than remove Mr. Gonzales-Salazar immediately or detain him pending removal, DHS released him on an Order of Supervision ("OSUP") for the next seven years.  (ECF Doc. 1, p. 3 ¶ 7.)  Respondents do not dispute that Mr. Gonzalez-Salazar fully complied with the OSUP's terms during that time, including attending regular check-ins with Immigration and Customs Enforcement ("ICE").  (*Id.* at p. 2, ¶ 3.)

2

On October 7, 2025, Mr. Gonzales-Salazar reported to the ICE Enforcement and Removal Operations ("ERO") Cleveland Office for a regularly scheduled check-in, and ICE took him into custody, revoking his OSUP.  (*Id*. at p. 3, ¶¶ 3-4; ECF Doc. 10-4, p. 7.)

At some point after he was taken into custody, Mr. Gonzales-Salazar expressed a fear of retuning to Guatemala and was granted a reasonable fear interview.  (ECF Doc. 10-3.)[1]  On December 3, 2025, a DHS officer found Mr. Gonzales-Salazar had a reasonable fear of experiencing persecution or torture in Guatemala and referred his case to an immigration judge to determine his eligibility for withholding of removal.  (*Id*. at p. 2.)  A merit hearing before an immigration judge was scheduled for February 27, 2026, and the judge denied Mr. Gonzales-Salazar's application for withholding of removal on March 18, 2026.  (*See* ECF Doc. 15-1); EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited May 15, 2026). Mr. Gonzales-Salazar's appeal was received by the Board of Immigration Appeals ("BIA") on April 17, 2026, and remains pending.  *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited May 15, 2026).

On November 11, 2025, Mr. Gonzales-Salazar filed an untimely Petition for Review of his removal order with the Sixth Circuit Court of Appeals, which also remains pending.  (*See* ECF Doc. 10-4; *Walter Gonzales-Salazar v. Todd Blanche*, No. 25-3907, (6th Cir. filed Nov. 12, 2025) (docket available at https://ca6-ecf.sso.dcn/cmecf/jsp/CaseSummary.jsp?caseNum=25-3907&incOrigDkt=Y&incDktEntries=Y) (last visited, May 15, 2026).

On November 19, 2025, Mr. Gonzales-Salazar filed the instant Petition raising 11 claims for relief.  (ECF Doc. 1.)  He alleges violations of his substantive and procedural due process rights under the Fifth Amendment to the U.S. Constitution (Counts 1, 2, 8, 9, and 10), violations

---

[1] Respondents assert that ICE ERO referred the case to the asylum office for a credible fear interview on October 9, 2025 (ECF Doc. 10, p. 7), but the cited document does not indicate when the case was referred (*see* ECF Doc. 10-3).

of the Administrative Procedure Act ("APA") (Counts 3, 4, and 5), ultra vires action by ICE

("Count 6), violations of the *Accardi* doctrine (Count 7), and violations of the Rehabilitation Act

(Count 11).  (ECF Doc. 1.)  However, his central claim is that ICE revoked his OSUP and

detained him in violation of his constitutional and statutory rights, acted outside its authority, and

failed to follow its own regulations.  (*Id*. at pp. 9-21, ¶¶ 39-92; ECF Doc. 13, pp. 4-11.)

In their Return of Writ and Motion to Dismiss, Respondents contend that: the Court lacks

jurisdiction to limit execution of Petitioner's final order of removal (ECF Doc. 10, pp. 18-19);

Petitioner failed to exhaust his administrative remedies (*id*. at pp. 9-11); Petitioner's detention

does not violate any relevant statutes, regulations, or the Constitution (*id*. at pp. 11-18); and

Petitioner's APA, *Accardi* doctrine, and Rehabilitations Act claims are not properly raised in a

habeas petition and should be dismissed (*id*. at 19-22).

### III.     Law and Analysis

**A.     Jurisdiction**

As an initial matter, Respondents assert that this Court does not have jurisdiction over the

Petition "[t]o the extent" Petitioner is seeking "to enter an order enjoining ICE's effectuation of

Petitioner's removal order."  (ECF Doc. 10, p. 23 (citing 8 U.S.C. § 1252(g)).)  This argument

refers to the request in Petitioner's Prayer for Relief that this Court "[e]njoin Petitioner's removal

or transfer outside the jurisdiction of this Court and the United States pending its adjudication of

this petition."  (ECF Doc. 1, p. 19.)  In his responsive brief, however, Mr. Gonzales-Salazar

asserts that he "is not seeking an injunction of his removal and acknowledges that 8 U.S.C. §

1252(g) would bar such relief."  (ECF Doc. 13, p. 13.)  Instead, he seeks an order of immediate

release based on the revocation of his OSUP and lack of accommodations for his blindness.  (*Id.*)

Generally, section 2241 of Title 28 gives federal courts the power to issue writs of habeas

corpus to persons "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241. This form of relief is "available to every individual detained within the United States" regardless of their legal status. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art I § 9, cl. 2). But section 1252(g) of Title 8 provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders[.]" 8 U.S.C. § 1252(g). The undersigned agrees with both parties that Petitioner's request for to enjoin his removal during the pendency of this action appears to run afoul of section 1252(g) and seeks relief this Court does not have jurisdiction to provide. But the Court ultimately need not rule on the issue of jurisdiction, since Petitioner has effectively withdrawn his request for injunctive relief relating to the removal order. (ECF Doc. 13, p. 13.)

While Respondent does not argue that section 1252(g) deprives this Court of jurisdiction to address the remainder of the Petition, the undersigned nevertheless observes that section 1252(g) has been narrowly read to preclude only "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding it "implausible that the mention of three discrete events" in § 1252(g) was meant to bar federal courts from considering "all claims arising from deportation proceedings" or to impose "a general jurisdictional limitation").

Consistent with that narrow reading, the Sixth Circuit found that a "district court had jurisdiction over . . . detention-based claims" which were "not tied to whether the district court has jurisdiction over . . . removal-based claims." *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018); *see also Zhislin v. Reno,* 195 F.3d 810 (6th Cir.1999) (applying the reasoning in *Reno,* 525 U.S. 471, and concluding that § 1252(g) did not preclude review of a noncitizen's

habeas petition).  The Supreme Court also distinguishes between habeas petitions seeking release and petitions seeking relief on a removal order.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117-19 (2020) (finding relief outside the scope of habeas corpus when petitioner requested review of a removal order rather than release from detention); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (finding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

Here, Petitioner alleges that ICE acted outside its statutory, regulatory, and constitutional authority when it revoked his OSUP and detained him in October 2025, and when it continued to detain him without ensuring proper care and accommodation for his glaucoma and impaired sight.  (ECF Doc. 1, pp. 9-19; ECF Doc. 13.)  He does not challenge the attorney general's decision to commence removal proceedings, to adjudicate his case, or to execute his removal order, and has withdrawn his request to enjoin his removal during the pendency of this action. (*Id.*)  Accordingly, consistent with other district courts, the undersigned concludes that this Court has jurisdiction to address the remainder of Mr. Gonzales-Salazar's Petition.  *See, e.g., Sanogoh v. Raycraft*, No. 1:25-CV-787, 2026 WL 292186, at *2-3 (S.D. Ohio Feb. 4, 2026); *Hammouda v. Dep't of Homeland Sec.*, No. 4:25-CV-2696, 2026 WL 91465, at *3 (N.D. Ohio Jan. 13, 2026); *Dornveil v. Noem*, No. 4:25-CV-1809, 2025 WL 2720786, at *3 (N.D. Ohio Sept. 24, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 151-54 (W.D.N.Y. 2025).

## B.    Prudential Exhaustion

Respondents next argue that this Court should dismiss the Petition without prejudice or stay proceedings so Petitioner may first exhaust his administrative remedies.  (ECF Doc. 10, pp. 9-11.)  They note that Mr. Gonzales-Salazar has a pending Petition for Review of his removal

6

order before the Sixth Circuit and ongoing immigration court proceedings regarding his application for withholding of removal.  (*Id.* at pp. 10-11.)  Petitioner responds that he does not have a meaningful administrative process to seek release from detention, since detention is not at issue in the Petition for Review or immigration court proceedings; he also notes that his Petition for Review in the Sixth Circuit is a judicial process, not administrative.  (ECF Doc. 13, p. 2.)

The parties agree that there is no statutory requirement for administrative exhaustion in this case.  (ECF Doc. 10, p. 9; ECF Doc. 13, p. 1.)  Because "'Congress has not clearly required exhaustion'" in this case, it is a matter within this Court's "'sound judicial discretion'" to determine whether to require exhaustion.  *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *see also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (finding exhaustion requirements that are not written into a statute are prudential, not jurisdictional); *Rodriguez v. Raycraft*, No. 4:26-CV-0302, 2026 WL 656956, at *6 (N.D. Ohio Mar. 9, 2026) ("Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not.") (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019)).

In determining whether to require prudential exhaustion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion," including "the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *McCarthy*, 503 U.S. at 145, 146.  While courts have discretion to require exhaustion, it "may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'"  *Shearson*, 725 F.3d at 594 (quoting

7

*Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir.1981)).  For example, exhaustion

may not serve judicial economy when the administrative agency does not have authority to

adjudicate the pending claims.  *See Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)

(finding court erred in dismissing a procedural due process claim for failure to exhaust when the

agency did not have authority to address an "integrally related" substantive due process claim).

Respondent asserts that "[t]he Ninth Circuit's test for prudential exhaustion is instructive

here."  (ECF Doc. 10, p. 10 (citing *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007).)  In *Puga v.*

*Chertoff*, 488 F.3d 812 (9th Cir. 2007), the Ninth Circuit set forth three factors to consider in the

prudential exhaustion analysis.  Under this test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga*, 488 F.3d at 815 (citations omitted).  Numerous courts in this district have applied the

*Puga* test in similar contexts.  *See, e.g., Mendoza v. Raycraft*, No. 4:25CV2183, 2025 WL

3157796, at *9, n. 12 (N.D. Ohio Nov. 12, 2025) (collecting cases).

"A court may also choose to waive prudential exhaustion and immediately reach the

merits of a dispute when the 'legal question is fit for resolution and delay means hardship.'"

*Lemus v. Lynch*, No. 4:26-CV-203, 2026 WL 496731, at *7 (N.D. Ohio Feb. 23, 2026) (quoting

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)).

Here, the undersigned does not find an exercise of prudential exhaustion to be appropriate

under any of the described standards.  Considering first the Petition for Review that is currently

pending before the Sixth Circuit, the undersigned agrees with Petitioner that this is a separate

judicial proceeding, not an administrative process.  (*See* ECF Doc. 13, p. 2.)  Section 1252(b)

establishes the process by which noncitizens may seek judicial review of a final removal order with a court of appeals.  *See* 8 U.S.C. § 1252(b).  That is a parallel judicial proceeding, not an administrative proceeding before the agency that is detaining Petitioner.  Further, in deciding the Petition for Review, the Sixth Circuit may only consider "the administrative record on which the order of removal is based."  8 U.S.C. § 1252(b)(4)(A).  There is no evidence that the administrative record for Petitioner's reinstated removal order, which was issued in 2018, is relevant to the issues before this Court.  Considering the "the twin purposes of protecting administrative agency authority and promoting judicial efficiency" *McCarthy*, 503 U.S. at 145, there is no agency authority to protect when the proceedings are before the judiciary, and there is no judicial efficiency to be gained by waiting for the conclusion of a separate judicial proceeding that applies unrelated facts to make a separate legal determination.

Turning to the pending immigration court proceedings on Petitioner's application for withholding of removal, Mr. Gonzales-Salazar argues that prudential exhaustion should not be required because he "has no meaningful administrative remedy to seek his release from detention" as he does in the Petition, and that his "detention is not an issue in his withholding-only proceedings before the Immigration Court."  (ECF Doc. 13, p. 2.)  Respondent does not address the disconnect between the relief sought in the Petition—relating to Mr. Gonzales-Salazar's detention—and the relief sought in the pending administrative proceedings—relating to enforcement of his removal order—offering instead a generic argument that Petitioner should be required to avail himself of the "robust administrative hearing and appeal process for aliens in removal proceedings" before filing suit in federal court.  (ECF Doc. 10, pp. 10-11.)

As a general matter, "the interest of the individual in retaining prompt access to a federal judicial forum," *see McCarthy*, 503 U.S. at 146, weighs against prudential exhaustion in this

9

case, as Mr. Gonzales-Salazar remains in detention without a known administrative process available to challenge his detention on the legal grounds raised in the Petition.  Conversely, the "countervailing institutional interests favoring exhaustion," including "the twin purposes of protecting administrative agency authority and promoting judicial efficiency," *see id.* at 145-46, do not support prudential exhaustion, since there is no indication that the pending administrative proceedings will gather evidence or make findings that are relevant to the legal issues raised in the Petition, and indeed there is no indication that the administrative agency could adjudicate any of the pending claims, *see Bangura*, 434 F.3d at 494.  Accordingly, the undersigned concludes that the imposition of an exhaustion requirement in this case would "not serve the purposes behind the exhaustion doctrine."  *See Shearson*, 725 F.3d at 594.

Considering the *Puga* factors cited by Respondents leads to the same result.  The first factor does not support exhaustion because agency expertise is not necessary to generate a proper record or reach a decision on the lawfulness of Petitioner's detention.  *See Puga*, 488 F.3d at 815.  Whether Petitioner was lawfully detained is a question that is factually and legally distinct from the question before the immigration court: whether Petitioner is entitled to withholding of removal.  Thus, development of the record in Petitioner's immigration case is not required for the Court to reach on decision on the legality of his detention.

The second factor also does not support exhaustion because relaxation of exhaustion requirements would not encourage deliberate bypass of any administrative schemes.  *See Puga*, 488 F.3d at 815.  The issue in Petitioner's immigration court proceedings is whether he is entitled to withholding of removal under 8 C.F.R. § 208.31(e).  (*See* ECF Doc. 10-3, p. 2.)  The question before this Court is whether he was lawfully and constitutionally detained, questions that are well outside the provenance of the immigration court to answer, particularly under the

10

regulations applicable to Petitioner. *See* 8 C.F.R. § 208.31(e) (providing that an immigration judge may consider "the request for withholding of removal *only*" in the case of a noncitizen whose removal has been reinstated and who claims a fear of persecution) (emphasis added).

The third factor also does not support exhaustion because Respondent has not identified any available administrative review process that is likely to "allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815. (*See* ECF Doc. 10, pp. 10-11.) The immigration judge may only consider whether Petitioner is entitled to withhold of removal, a determination that would not address any issue that is before this Court.

For the reasons set forth above, the undersigned concludes that prudential exhaustion is not warranted in this case and recommends that the Court waive any administrative exhaustion requirement and proceed to address the merits of Mr. Gonzales-Salazar's Petition.

**C.      Petitioner's Procedural Due Process Claim**

The central claim in the Petition is that Respondents revoked Mr. Gonzales-Salazar's OSUP in violation of his procedural due process rights and their own regulations. (ECF Doc. 1, pp. 9-21, ¶¶ 39-92; ECF Doc. 13, pp. 4-11.) Petitioner asserts that the Fifth Amendment right to Due Process "'applies to all persons within the United States, including aliens,'" (ECF Doc. 1, p. 4, ¶ 19 (quoting *Zadvydas*, 533 U.S. at 693)), and that his rights were violated when he was deprived of liberty without notice and a meaningful opportunity to respond (*id*. at p. 11, ¶ 49). Specifically, he argues his detention violates due process because "ICE violated 8 C.F.R. § 241.4(l)(1) in re-detaining him without complying with the regulatory requirements," including requirements that he be given "notice of the reasons for the revocation and a prompt interview to respond" following revocation of his OSUP.[2] (ECF Doc. 13, p. 6; ECF Doc. 1, p. 7, ¶ 27.)

---

[2] Petitioner also argues that the revocation of his OSUP was unlawful because the individual responsible was not delegated the authority to revoke his release. (ECF Doc. 1, pp. 6, ¶ 26, 12 ¶ 55.) Respondents did not respond to

Respondents do not assert that the regulatory requirements in 8 C.F.R. § 241.4(l)(1) were followed when Mr. Gonzales-Salazar was detained. Instead, they argue that Petitioner "relies on the incorrect subsection of the regulations" and that the regulations applicable to Mr. Gonzales-Salazar's re-detention "do[] not provide for notice or an interview." [3] (ECF Doc. 10, p. 14 (citing 8 C.F.R. § 241.4(l)(2)).) The undersigned will therefore consider the applicable regulations.

The parties agree that Mr. Gonzales-Salazar is detained pursuant to 8 U.S.C. § 1231, which governs the detention, supervision, and removal of noncitizens subject to a final order of removal. (ECF Doc. 1, p. 5, ¶ 22; ECF Doc. 10, p. 6.) Under 8 U.S.C. § 1231(a)(1), a final removal order must be effectuated within 90 days ("removal period"). If the noncitizen does not leave or is not removed within the removal period, the noncitizen shall be subject to a supervised release pending removal. 8 U.S.C. § 1231(a)(3).[4] Here, the applicable removal order was reinstated on June 20, 2018, at which time Petitioner was released on supervised release, subject to the terms of his OSUP, pending his removal. (*See* ECF Doc. 10-2; ECF Doc. 1, p. 3 ¶ 7.)

On October 7, 2025, after remaining in compliance with the terms of his OSUP for seven years, Mr. Gonzales-Salazar was taken into custody at a scheduled check-in, and his OSUP was revoked. (ECF Doc. 1, p. 3, ¶¶ 3-4; ECF Doc. 10-4, p. 7.) Pursuant to 8 C.F.R. § 241.4(l),

---

this challenge. (ECF Doc. 10.) As the undersigned finds that the Petition should be granted based on a failure to follow the proper procedures for revoking the OSUP, Petitioner's delegation argument need not be addressed.

[3] Respondents also assert that Petitioner cannot challenge his detention until he has been detained at least six months. (ECF Doc. 10, pp. 16-18 (discussing *Zadvydas*, 533 U.S. at 689-701 and noting that the Supreme Court found a post-removal-order detention for six months "presumptively reasonable").) The undersigned does not find this argument persuasive, as Petitioner is challenging the sufficiency of the process by which he was detained, not the length or fact of his detention. *See Primero v. Mattivelo*, No. 1:25-CV-11442-IT, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (distinguishing *Zadvydas* where a petitioner challenged an initial detention decision rather than his indefinite detention). It is also observed that more than six months have now passed since Petitioner's detention.

[4] The noncitizen may be detained past 90 days if the noncitizen is: (1) inadmissible under 8 U.S.C. § 1182; (2) removable under 8 U.S.C. § 1227; or (3) a danger to the community or a flight risk. 8 U.S.C. § 1231(a)(6).

officials have discretion to revoke a noncitizen's supervised release when "in the opinion of the revoking official": (1) the purposes of release have been served; (2) the noncitizen violated the conditions of release; (3) it is appropriate to enforce the removal order or commence removal proceedings; or (4) circumstances indicate release would no longer be appropriate.  8 C.F.R. § 241.4(l)(2)(i)-(iv).  The procedures for revocation are set forth in § 241.4(l)(1), which provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(l)(1).

Petitioner asserts that ICE violated his due process rights when it failed to comply with the requirements of section 241.4(l)(1) upon his re-detention, specifically his right to: (1) notice of the reasons for revocation; and (2) a prompt initial information interview with an opportunity to respond to the reasons for revocation.  (ECF Doc. 13, p. 6 (citing § 241.4(l)(1) and ECF Doc. 1, pp. 5-7 ¶¶ 22-27).)  Rather than provide evidence of compliance with the requirements, Respondents argue the requirements do not apply to Mr. Gonzales Salazar because "[s]ubsection (l)(1) only applies to aliens who have violated the conditions of their release," while the applicable subsection was instead "subsection (2)" which "allows ICE to use its discretion to revoke release and does not provide for notice or an interview."  (ECF Doc. 10, p. 14.)

Respondent's interpretation is not supported by the applicable regulatory language. Section 241.1(l) addresses "Revocation of release" and has three subsections: (1) "Violation of conditions of release"; (2) "Determination by the Service"; and (3) "Timing of review when release is revoked."  8 C.F.R. § 241.4(l)(1)-(3).  Subsection (1) provides that an alien who violates the conditions of release may be returned to custody and that "[u]pon revocation" an alien must be given notice of the reasons for revocation and an initial interview "promptly" after

13

his return to custody, so he has "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Subsection (2) identifies the officials with authority to revoke release and outlines situations in which release may be revoked, *including* when "the alien violates any condition of release." 8 C.F.R. § 241.4(l)(2). Subsection (3) outlines the further "review process" available to an alien whose release has been revoked by one of the officials specified in section (l)(2) "[i]f the alien is not released from custody following the informal interview provided for in paragraph (l)(1)." 8 C.F.R. § 241.4(l)(3).

Thus, the three subsections of section 241.4(l) address: (1) initial regulatory requirements upon revocation; (2) the process for revoking release, including who may do so and for what reasons; and (3) further review processes if the alien is not released in the initial stages. They clearly do not, as Respondent suggests, outline one process to revoke release for violators in (l)(1) and a separate process for all other revocations in (l)(2). If subsection (l)(1) articulates a separate process for violators, why does subsection (l)(2) also list aliens who "violate[] any condition of release" among the situations where "[r]elease may be revoked"? 8 C.F.R. § 241.4(l)(2). And if the notice and initial interview described in (l)(1) is only available to violators, why does (l)(3) discuss review processes available after the "informal interview" in (l)(1) for individuals whose release was revoked by one of the officials identified in (l)(2)? As another district court recently held, such overlaps "belie[] the Government's argument that these are two separate processes, and suggest[] that paragraph (l) sets forth a unified set of procedures for the revocation of removal." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025).

Not only is Respondent's interpretation unsupported by the regulatory language, it also defies logic and equity. As another court in this district observed: "[t]o adopt Respondents' interpretation would lead to a nonsensical result with individuals who violate conditions of their

14

release receiving more process than individuals who do not." *Hammouda*, 2026 WL 91465, at *4 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that while parolees are subject "to many restrictions not applicable to other citizens," they are nevertheless entitled to some "minimal inquiry" to determine whether detention before parole revocation is appropriate)).

Respondents have not cited any cases that adopt their proposed interpretation of section 241.4(l), and the undersigned is aware of none. Instead, courts have consistently rejected similar interpretations of the regulatory language. *See, e.g., Mbonga v. Raycraft*, 809 F. Supp. 3d 762, 768 (N.D. Ohio 2025); *Hammouda*, 2026 WL 91465, at *3; *K.E.O.*, 2025 WL 255339, at *4; *Ceesay*, 781 F. Supp. 3d at 162-63.

For the reasons stated above, the undersigned concludes that the governing regulations required that Petitioner be offered "noti[ce] of the reasons for revocation of his . . . release" at the time his OSUP was revoked in October 2025, followed by "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). There is no evidence before this Court to suggest that Respondents provided Petitioner with notice of the reasons for the revocation of his OSUP or afforded him an informal interview under 8 C.F.R. § 241.4(l) at any time; and Respondents do not allege that they did so. (*See* ECF Doc. 10.) Thus, the record requires a finding that Respondents failed to provide Petitioner with the regulatory process required by the applicable regulations when they revoked his OSUP and detained him.

Respondents contend that the revocation of Petitioner's OSUP comports with the regulations and the Constitution because "ICE exercised its significant discretion in revoking Petitioner's [OSUP] for the purpose of enforcing Petitioner's removal order." (*Id*. at p. 13 (citing

15

8 C.F.R. § 241.4(l)(2)); *see id*. at p. 16 ("Petitioner's claim . . . fails because ICE properly exercised its ample discretion in revoking Petitioner's release").)

While ICE had discretion to revoke an OSUP, its discretion must be exercised within the bounds of the law. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations.") *superseded in part by statute on other grounds as recognized in Thuraissigiam*, 591 U.S. at 135 (2020) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (requiring agency compliance with unpublished agency rules and manuals).  Here, Respondents did not provide Petitioner the notice and opportunity to be heard that was explicitly required in the governing regulations.

Petitioner argues that his detention following the revocation of his OSUP violated his due process rights because he was not afforded "some form of notice and opportunity to respond before a significant deprivation of liberty."  (ECF Doc. 13, p. 7.)  The Due Process clause prohibits deprivations of life, liberty, and property without due process of law, U.S. Const. amend. V, and is applicable "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas*, 533 U.S. at 693.[5] The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).  The Supreme Court has also recognized that "[f]reedom

---

[5] *See also Trump v. J.G.G.*, 604 U.S. ___, 145 S. Ct. 1003, 1006 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks and citation omitted).

from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

In failing to provide Petitioner with notice of the reasons for his revocation and detention, and an informal interview promptly after revoking his release in accordance with 8 C.F.R. § 241.4, the undersigned concludes that Respondents denied him the basic requirements of procedural due process: notice and an opportunity to be heard.  *See Mathews*, 424 U.S. at 348. This finding is consistent with that of other courts addressing similar failures to comply with the notice and initial interview requirements of section 241.4(l)(1).  *See, e.g., Mbonga*, 809 F. Supp. 3d. at 767-68; *Zhu*, 798 F. Supp. 3d at 414-15; *Alcivar Lorenzo v. Raycraft*, No. 1:26-CV-77, 2026 WL 369349, at *6 (W.D. Mich. Feb. 10, 2026); *Hammouda*, 2026 WL 91465, at *5; *Rasakhamdee v. Noem*, No. 3:25-CV-02816-RBM-DEB, 2025 WL 3102037, at *5 (S.D. Cal. Nov. 6, 2025); *K.E.O.*, 2025 WL 2553394, at *5; *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

Respondents' citation to other cases where "[c]ourts routinely conclude that compliance with the POCR regulations protect individual's [*sic*] Constitutional rights while detained" does not change this analysis.  (*See* ECF Doc. 10, pp. 15-16 (citing *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6-7 (S.D.N.Y. Mar. 18, 2022); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *7 (D. Mass. Oct. 1, 2018); *Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), *report and recommendation adopted*, No. CV 24-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025)).)  In each of the cited cases, the court either found that ICE had complied with the statutory framework by providing notice and an informal interview upon revocation of an OSUP, *see, e.g., Doe*, 2018 WL 4696748, at *7, or

17

that the petitioner had failed to allege that ICE violated the regulations, *see, e.g., Moses*, 2016 WL 2636352, at \*4.

For the reasons set forth above, the undersigned concludes that Respondents' failure to follow the requirements of 8 C.F.R. § 241.4(l)(1) when revoking Mr. Gonzales-Salazar's OSUP deprived him of due process of law under the Fifth Amendment as alleged in Counts 2 and 7 of the Petition.  Like other courts, the undersigned further concludes that the appropriate remedy is to order Petitioner's release from his illegal detention.  *See, e.g., K.E.O.*, 2025 WL 2553394, at \*7 ("As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. . . . The Court will not depart from this norm.") (citing cases); *Alcivar Lorenzo*, 2026 WL 369349, at \*6 (collecting cases).

The undersigned accordingly recommends that the Court **DENY** the Motion to Dismiss, **GRANT** the Petition, and order Mr. Gonzales-Salazar released from custody.[6]

---

[6] Given the recommendation to grant the petition because Respondents violated Petitioner's due process rights and their own regulations, it is unnecessary to consider Petitioner's alternative claims for relief set forth in Counts 1, 3, 4, 5, 6, 8, 9, 10, and 11.  (ECF Doc. 11, pp. 25-27.)

## IV.     Conclusion

For the reasons set forth above, the undersigned recommends that the Court **DENY** Respondent's Motion to Dismiss, **GRANT** Mr. Gonzales-Salazar's Petition, and order that Mr. Gonzales-Salazar be released from custody immediately, subject to his preexisting Order of Supervision.

May 15, 2026

/s/ *Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).